# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| **BARBARA A. RAMEY,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:05cv00044 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, ) | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Barbara A. Ramey, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

-1-

than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Ramey protectively filed her applications for DIB and SSI on or about March 15, 2001,[1] alleging disability as of May 4, 1999,[2] based on "nerves," bilateral heel spurs, arthritis, degenerative joint disease, depression, panic attacks, anxiety, fibromyalgia, migraine headaches and temporal mandibular joint pain. (Record, ("R."), at 93-96, 111, 141, 155, 353-58.) Ramey's claims were denied both initially and on reconsideration. (R. at 58-60, 61, 63-64, 365-66.) Ramey then requested a hearing before an administrative law judge, ("ALJ"). (R. at 65.) The ALJ held a hearing, and, by decision dated July 26, 2002, the ALJ denied Ramey's claims. (R. at 41-45.) After the ALJ issued his decision, Ramey pursued her administrative appeals, (R. at 37), and the Appeals Council remanded the claims for a new hearing and decision due to a lost hearing tape. (R. at 33-34.) A new hearing was held on May 10, 2005, at which Ramey was represented by counsel. (R. at 380-402.)

---

[1]Ramey filed a previous claim for DIB on May 26, 1999, alleging disability as of May 4, 1999. This claim was denied initially, on reconsideration and by decision dated October 20, 2000. Ramey requested review by the Appeals Council, and the Appeals Council denied her request. Ramey then filed a civil action in this court. (R. at 16.) By order dated August 14, 2002, this court affirmed the October 20, 2000, decision. *See Ramey v. Barnhart*, Civ. No. 1:02cv00018 (W.D. Va. Aug. 14, 2002).

[2]Ramey subsequently amended her claim to request a closed period of benefits for the period of October 21, 2000, one day after the date of the unfavorable and final decision on her prior claim, through March 1, 2003, the date Ramey returned to work. (R. at 16, 401.)

-2-

By decision dated May 26, 2005, the ALJ denied Ramey's claims. (R. at 16-26.) The ALJ found that Ramey met the disability insured status requirements of the Act through the date of the decision. (R. at 24.) The ALJ found that Ramey had not engaged in substantial gainful activity since the alleged onset date. (R. at 24.) The ALJ also found that the medical evidence established that Ramey had severe impairments, namely osteoarthritis of both legs and both feet, obesity and hypothyroidism, but he found that Ramey did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24-25.) The ALJ further found that Ramey's subjective allegations regarding her limitations were not totally credible. (R. at 25.) The ALJ found that Ramey retained the residual functional capacity to perform sedentary[3] work which did not require her to have frequent interaction with the public or to push or pull with the lower extremities. (R. at 25.) Therefore, the ALJ found that Ramey was unable to perform any of her past relevant work. (R. at 25.) Based on Ramey's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Ramey could perform jobs existing in significant numbers in the national economy. (R. at 25.) Thus, the ALJ found that Ramey was not disabled under the Act and was not eligible for benefits. (R. at 25-26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued his decision, Ramey pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 7-10.) Ramey then filed this action seeking review of the ALJ's unfavorable decision, which now

---

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying items like docket files, ledgers and small tools. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2005).

-3-

stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Ramey's motion for summary judgment filed February 10, 2006, and the Commissioner's motion for summary judgment filed March 9, 2006.

*II. Facts*

Ramey was born in 1968, (R. at 93), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2005). She has a high school education and completed one year of vocational training to become a licensed practical nurse, ("LPN"). (R. at 117.) Ramey has past relevant work experience as an LPN, a telemarketer, an emergency medical technician, a certified nurse's aide and a receptionist. (R. at 112.)

At her hearing, Ramey testified that she had lost weight and that she weighed 259 pounds. (R. at 385.) She stated that she no longer suffered from depression. (R. at 387.) She stated that she still suffered from arthritis, but it was not as bad as it was because she had lost weight. (R. at 388.) Ramey stated that the only medication that she took was thyroid medication and Motrin and Tylenol when needed. (R. at 390.) She stated that her leg and foot pain had improved and that she wore shoes with arch supports. (R. at 390.)

John Newman, a vocational expert, also was present and testified at Ramey's hearing. (R. at 393-401.) Newman classified Ramey's past relevant work as a

certified nursing aide as heavy[4] and semi-skilled, as an emergency medical technician as heavy and semi-skilled, as a licensed practical nurse as heavy and skilled, as a receptionist as sedentary and semi-skilled and as a telephone interviewer as sedentary and unskilled. (R. at 395.) Newman was asked to consider an individual of Ramey's age, education and work experience who had the residual functional capacity to perform sedentary work, who had a history of obesity, leg, foot and ankle pain from osteoarthritis and heel spurs, a depressive or dysthymic disorder with some anxiety and who should avoid tasks with frequent interaction with the public and moderate stress levels and no pushing and pulling with her lower extremities. (R. at 395.) Newman testified that jobs existed in significant numbers in the national economy that such an individual could perform, including jobs as an assembler and a packer. (R. at 396.)

In rendering his decision, the ALJ reviewed records from Dr. Brian Mazzei, M.D.; Cumberland Mountain Community Services; Dr. Richard M. Surrusco, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Dr. Nayab Zafar, M.D.; Barry Friedman, Ph.D., a licensed clinical psychologist; Dr. Antonio Peralta, M.D.; Dr. N. Eryilmaz, M.D., a radiologist; and Buchanan County Rural Family Practice Center.

Ramey was seen at Cumberland Mountain Community Services from May 5, 1999, through November 9, 2001, for individual and group therapy. (R. at 269-322.)

---

[4] Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds or more. If someone can do heavy work, she also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2005).

-5-

Case 2:05-cv-00044-JPJ-PMS   Document 14   Filed 06/13/06   Page 5 of 18   Pageid#: 73

On June 3, 1999, Susan Coleman, a licensed clinical social worker, noted that Ramey's reported symptoms of depression did not meet the criteria for major depression. (R. at 316.) Ramey was diagnosed with a depressive disorder, not otherwise specified, and a generalized anxiety disorder. (R. at 309.) Coleman assessed Ramey's Global Assessment of Functioning, ("GAF"),[5] score at 63.[6] (R. at 309.) On June 17, 1999, Ramey's mood was depressed, and her affect was restricted. (R. at 307.) Her thought processes were coherent, and she was fully oriented. (R. at 307.) On September 24, 1999, Ramey's case file was closed after failing to respond to an inquiry regarding further treatment. (R. at 305.)

By January 23, 2001, Ramey again requested counseling due to problems with her nerves, depression, panic attacks and paranoia. (R. at 296-303.) Ramey reported that her symptoms had worsened over the previous two months. (R. at 296.) She further reported that her husband was verbally abusive and that they sometimes got into physical fights. (R. at 297.) Her mood was depressed, and her affect was flat. (R. at 303.) Ramey was diagnosed with a depressive disorder, not otherwise specified, and a generalized anxiety disorder. (R. at 303.) Her GAF score was assessed as 58.[7] (R. at 269.) On February 8, 2001, Ramey was described as alert and oriented with a

---

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, (DSM-IV), 32 (American Psychiatric Association 1994).

[6]A GAF of 61-70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[7]A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning. ..." DSM-IV at 32.

depressed mood and flat affect. (R. at 294.) On April 6, 2001, Ramey attended a group therapy session with Jeffrey H. Leblang, Ph.D., a licensed clinical psychologist. (R. at 292.) Leblang reported that Ramey was experiencing mild to moderate depression and moderate anxiety. (R. at 292.) Her mood was described as depressed, and her affect as blunted. (R. at 292.) On April 20, 2001, Ramey's mood was described as depressed. (R. at 291.) On May 4, 2001, Ramey reported that her medication had been increased, and she felt less depressed. (R. at 290.) On June 15, 2001, Ramey reported that her crying episodes had decreased in both frequency and intensity since her medication had been increased. (R. at 288.)

On May 26, 1999, Ramey saw Dr. Brian Mazzei, M.D., for complaints of heel spur pain. (R. at 169-70.) A physical examination revealed full motor strength in all muscle groups and a full range of motion in both ankles. (R. at 170.) Dr. Mazzei diagnosed Ramey with a right calcaneal spur. (R. at 170.) He advised her to always wear shoes and he gave her a lower extremity stretching handout. (R. at 170.)

On March 10, 2000, Dr. Nayab Zafar, M.D., diagnosed degenerative joint disease and bilateral heel and ankle pain with associated severe obesity. (R. at 201.) Dr. Zafar strongly recommended weight loss and provided Ramey with aquatic instructions. (R. at 200.) On March 13, 2000, Dr. Zafar completed a physical assessment indicating that Ramey's ability to lift and/or carry was affected by her impairment, but he did not explain to what extent. (R. at 176-80.) Similarly, Dr. Zafar found that Ramey's ability to stand and/or walk was affected by her impairment, but he did not explain to what extent. (R. at 177.) Dr. Zafar found that Ramey's ability to sit was not affected by her impairment. (R. at 177.) He noted that Ramey's

restrictions resulted from severe pain in the heels with certain activities such as walking. (R. at 180.) He further noted that Ramey required modified footwear by a qualified podiatrist, as well as weight loss. (R. at 180.)

On August 2, 2000, Dr. Zafar completed another physical assessment indicating that Ramey could lift and/or carry items weighing up to 50 pounds occasionally and up to 10 pounds frequently. (R. at 171-75.) Dr. Zafar found that Ramey could stand and/or walk for one to two hours in an eight-hour workday, doing so for 15 to 20 minutes without interruption. (R. at 172.) Likewise, he found that she could sit for one to two hours in an eight-hour workday, doing so for 15 to 20 minutes without interruption. (R. at 172.) Dr. Zafar found that Ramey could never climb, stoop, kneel, crouch or crawl, but he found that she could occasionally balance. (R. at 173.) He found that Ramey's ability to push and/or pull was affected by her impairment. (R. at 173.) He noted that Ramey suffered from severe leg and heel pain, worsened by physical activities and medical conditions. (R. at 175.) On February 20, 2001, Dr. Zafar diagnosed Ramey with major depression. (R. at 199.) On August 9, 2001, Ramey reported that she felt a lot better, reporting that she was less depressed since taking her medication. (R. at 197.)

On July 19, 2001, Julie Jennings, Ph.D., a state agency psychologist, indicated that Ramey suffered from a nonsevere affective disorder. (R. at 331-44.) Jennings indicated that Ramey was only mildly restricted in her activities of daily living, in maintaining social functioning, in maintaining concentration, persistence or pace and never experienced episodes of deterioration or decompensation in work or work-like settings. (R. at 341.) This assessment was affirmed by Eugenie Hamilton, Ph.D.,

-8-

Case 2:05-cv-00044-JPJ-PMS   Document 14   Filed 06/13/06   Page 8 of 18   Pageid#: 76

another state agency psychologist, on December 27, 2001. (R. at 331.)

On August 14, 2001, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Ramey had the residual functional capacity to perform a limited range of light work.[8] (R. at 323-30.) He found that Ramey could stand and/or walk for two hours in an eight-hour workday and she could sit for six hours in an eight-hour workday. (R. at 324.) Dr. Surrusco found that Ramey's ability to push and/or pull was limited in her lower extremities. (R. at 324.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 326-28.) This assessment was affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on December 27, 2001. (R. at 330.)

On July 7, 2001, Barry Friedman, Ph.D., a licensed clinical psychologist, evaluated Ramey at the request of Disability Determination Services. (R. at 181-84.) Ramey did not complain of experiencing any pain during the evaluation and gave no objective indications of experiencing any pain. (R. at 183.) No signs of psychosis were noted, and Ramey reported that she had never experienced any psychotic symptoms. (R. at 183.) Friedman diagnosed a depressive disorder, not otherwise specified. (R. at 184.) He reported that Ramey appeared to be able to succeed in a competitive work environment that provided low or normal levels of stress. (R. at 184.) He reported that Ramey's activities of daily living appeared to be mildly impaired and that her social functioning appeared to be moderately impaired. (R. at 184.) He also indicated that Ramey's ability for concentration and persistence did not appear to be impaired, but

---

[8]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005).

-9-

that her pace might be moderately impaired. (R. at 184.) No episodes of decompensation of extended duration were reported. (R. at 184.)

On July 16, 2001, Dr. Antonio Peralta, M.D., saw Ramey for her complaints of pain in both ankles and right foot pain. (R. at 188-91.) Ramey weighed 282 pounds and was five feet nine inches tall. (R. at 189.) Dr. Peralta diagnosed degenerative joint disease, para-advanced osteoarthritis, history of hypothyroidism, anxiety with panic attacks and depression and morbid obesity. (R. at 191.)

Ramey presented to Buchanan County Rural Family Practice Center on October 5, 2001, with complaints of headaches and neck and back pain. (R. at 268.) Examination showed mild paraspinal tenderness to the lumbar and cervical areas with a mild decrease in her range of motion. (R. at 268.) Ramey was diagnosed with cervical and lumbar strain. (R. at 268.) On November 5, 2001, Ramey complained of left sided flank pain. (R. at 267.) She was diagnosed with abdominal pain and cervical strain. (R. at 267.) On June 14, 2002, Ramey complained of a knot on her left foot. (R. at 346.) She was diagnosed with hypothyroidism and left foot pain with history of bone spurs. (R. at 346.) On February 18, 2002, Ramey complained of depression. (R. at 349.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This

process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West Supp. 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 26, 2005, the ALJ denied Ramey's claims. (R. at 16-26.) The ALJ found that the medical evidence established that Ramey had severe impairments, namely osteoarthritis of both legs and both feet, obesity and hypothyroidism, but he found that Ramey did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24-25.) The ALJ found that Ramey retained the residual functional capacity to perform sedentary work which did not require her to have

-11-

frequent interaction with the public or to push or pull with the lower extremities. (R. at 25.) Therefore, the ALJ found that Ramey was unable to perform any of her past relevant work. (R. at 25.) Based on Ramey's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Ramey could perform jobs existing in significant numbers in the national economy. (R. at 25.) Thus, the ALJ found that Ramey was not disabled under the Act and was not eligible for benefits. (R. at 25-26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

In her brief, Ramey argues that the ALJ erred by finding that she had the residual functional capacity to perform alternative work. (Memorandum In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-23.) Ramey also argues that the ALJ erred in determining that she retained the residual functional capacity to perform sedentary work. (Plaintiff's Brief at 23-27.) In particular, Ramey argues that the ALJ erred by rejecting Dr. Zafar's residual functional capacity assessment. (Plaintiff's Brief at 23-27.) Ramey further argues that the ALJ erred by finding that she did not suffer from a severe mental impairment. (Plaintiff's Brief at 27-30.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether

-12-

Case 2:05-cv-00044-JPJ-PMS   Document 14   Filed 06/13/06   Page 12 of 18   Pageid#: 80

the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Ramey argues that the ALJ erred by finding that she retained the residual functional capacity to perform sedentary work. (Plaintiff's Brief at 23-27.) In particular, Ramey argues that the ALJ erred by rejecting the residual functional capacity assessment completed by Dr. Zafar. (Plaintiff's Brief at 23-27.) It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). "Thus it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if [her] decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456. Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Based on my review of the evidence, I find that the ALJ properly rejected Dr. Zafar's assessment and did not err in finding that Ramey retained the residual functional capacity to perform sedentary work. In his decision, the ALJ noted that both assessments were thoroughly discussed in the previous ALJ decision issued in October 2000, with this court concluding that the ALJ's rejection of these limitations was

-13-

supported by substantial evidence. (R. at 18.) Regardless, Dr. Zafar's assessment is inconsistent with the objective medical evidence of record. For instance, on May 26, 1999, Dr. Mazzei, a podiatrist, noted that Ramey had full motor strength in all muscle groups and a full range of motion in both ankles. (R. at 169-70.) In addition, two state agency physicians opined in August 2001 and December 2001, that despite Ramey's obesity and bilateral heel spurs, she had the residual functional capacity to perform light work with limited pushing and pulling in the lower extremities. (R. at 323-30.) Furthermore, Dr. Zafar, himself, stated that Ramey's ability to sit was not affected by her impairment in his March 13, 2000, assessment. (R. at 177.) While on August 2, 2000, Dr. Zafar stated that Ramey could sit for only one to two hours in a day, (R. at 172), his assessment offers no evidence of any change in Ramey's condition requiring this restriction. Based on the above-stated reasons, I find that the ALJ did not err by rejecting Dr. Zafar's assessment and by finding that Ramey could perform sedentary work.

Ramey further argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 27-30.) On June 3, 1999, Susan Coleman, a licensed clinical social worker, noted that Ramey's symptoms of depression did not meet the criteria for major depression. (R. at 316.) She was diagnosed with a depressive disorder, not otherwise specified, and a generalized anxiety disorder. (R. at 309.) Coleman assessed Ramey's GAF score at 63, indicating only mild symptoms or some difficulty in social, occupational or school functioning. (R. at 309.) In May 2001 and June 2001, Ramey reported that her medication had been increased and that she felt less depressed and had experienced a decrease in both frequency and intensity of crying episodes. (R. at 288, 290.) A state agency

-14-

psychologist opined in July 2001 that Ramey did not have a severe mental impairment. (R. at 331.) Also, in July 2001, Friedman diagnosed Ramey with a depressive disorder, not otherwise specified. (R. at 184.) While he opined that Ramey's social functioning appeared to be moderately impaired, he still concluded that Ramey appeared to be able to succeed in a competitive work environment that provided low or normal levels of stress. (R. at 184.) In addition, Ramey reported in August 2001 that her symptoms of depression had improved since taking her medication. (R. at 197.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based upon the above, I find that substantial evidence exists in this record to support the ALJ's finding on this issue.

Finally, Ramey argues that the assembler and packer jobs identified by the vocational expert did not constitute a "significant" number of jobs as required by the regulations. *See* 20 C.F.R. §§ 404.1566, 416.966 (2005). The vocational expert in this case testified that there were approximately 2,000 assembler jobs in the regional economy and 100,000 jobs in the national economy that the hypothetical individual could perform. (R. at 397.) The vocational expert further testified that there were approximately 800 packer jobs in the regional economy and 10,000 in the national economy that the hypothetical individual could perform. (R. at 396.) While Ramey notes that some of the many assembler positions set forth in the Dictionary of Occupational Titles, ("DOT"), are not unskilled and sedentary work as set forth in the ALJ's hypothetical question to the vocational expert, at least two are. Ramey argues that the number of jobs identified by the vocational expert was an aggregate number for all types of assembler jobs, not just those that are sedentary and unskilled. (Plaintiff's Brief at 21.) Based on my review of the record, I do not agree. In fact, the

-15-

vocational expert was specifically asked:

> Q  Okay. If I understand it correctly, the assembler and packer jobs you gave are all sedentary and unskilled?
>
> A  That's correct, sir.

(R. at 399.) Ramey argues that this number of jobs in the regional economy would not constitute a "significant" number of jobs as required by the regulations. (Plaintiff's Brief at 18.) The Court of Appeals for the Fourth Circuit, however, stated in *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979), that 110 jobs would not constitute an insignificant number. In *Craigie v. Bowen*, 835 F.2d 56, 58 (3rd Cir. 1987), the Third Circuit also stated that 200 jobs in the region was a clear indication that there existed in the national economy other substantial gainful work which a claimant could perform. In this case, the vocational expert identified 2,000 assembler jobs and 800 packer jobs that existed regionally and 100,000 assembler jobs and 10,000 packer jobs that existed nationally that the hypothetical person could perform. (R. at 396-97.) Based on the above-stated cases, I reject Ramey's argument on this issue.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Ramey's physical residual functional capacity;

2. Substantial evidence exists to support the ALJ's finding that Ramey did not suffer from a severe mental impairment;

3. Substantial evidence exists to support the ALJ's finding that a significant number of jobs exists that Ramey could perform; and

4. Substantial evidence exists to support the ALJ's finding that Ramey was not disabled under the Act during the period of October 21, 2000, through March 1, 2003.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Ramey's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits. I further recommend that the court deny Ramey's request to present oral argument based on my finding that the parties have more than adequately addressed the relevant issues in their written arguments.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 13th day of June 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE